UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| UNITED STATES OF AMERICA | CIVIL ACTION |
|---|---|
| VERSUS | NOS: 02-1780, 04-0296, 02-1733, 04-0240, 02-1803, 04-0300 |
| | REF. CR. NO. 95-0106 |
| MICHAEL O'KEEFE, SR. ET AL. | SECTION: "S" (5) |


## ORDER AND REASONS

Michael O'Keefe, Sr., John O'Brien, and Gary Bennett seek reconsideration of the court's Order and Reasons of June 29, 2005, denying the motions to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255.

**IT IS HEREBY ORDERED** that the motions for reconsideration of Michael O'Keefe, Sr., John O'Brien, and Gary Bennett are **DENIED**.  (Documents #777, #783,  #786, #776, #789, and #784.)

**IT IS FURTHER ORDERED** that the government's motion to dismiss Michael O'Keefe's supplemental motion for reconsideration filed by counsel is **DENIED**.  (Document #795.)

**IT IS FURTHER ORDERED** that Michael O'Keefe's "Motion to Supply Record

Information" is **GRANTED**.  (Document #785.)

**IT IS FURTHER ORDERED** that the government's motion to strike O'Keefe's amendment to the motion for reconsideration and the supplemental record information is **DENIED**.  (Document #804.)

## I. BACKGROUND

The facts of this case are well documented and are not repeated here.  Following appeals from their convictions and the denial of a motion for a new trial, Michael O'Keefe, Sr., John O'Brien, Eric Schmidt, and Gary Bennett filed a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255.  The court denied the § 2255 motion on June 29, 2005.  O'Keefe, Bennett, and O'Brien filed a motion to alter or amend the judgment.[1]

## II. DISCUSSION

**A. Legal standard**

"A Rule 59(e) motion is a motion that calls into question the correctness of a judgment." In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002).  The court "has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration arising under [Rule 59(e)]."  Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 174 (5th Cir. 1990).  "Rule 59(e) is properly invoked to correct manifest errors of law or fact or to present newly discovered evidence."  In re Transtexas Gas Corp., 303 F.3d at 581 (internal quotation and citation omitted).  "A Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's

---

[1]   O'Keefe, Bennett, and O'Brien adopt each other's arguments.

dissatisfaction." In re Self, 172 F.Supp.2d 813, 816 (W.D.La. 2001).

**B.    O'Keefe's claim of ineffective assistance of counsel:  failure to investigate and call Mabry and Barringer**

O'Keefe seeks reconsideration of the denial of his claim that counsel was ineffective in failing to interview and call G. Michael Mabry and L.D. Barringer[2] as witnesses at trial.  To support these claims, O'Keefe must prove two components:  1) that his counsel made errors that were so serious that they deprived him of his Sixth Amendment guarantee and 2) that the deficient performance prejudiced his defense.  Strickland v. Washington, 104 S.Ct. 2052 (1984).

O'Keefe argues that the failure to interview Mabry and Barringer was not based on trial strategy because defense counsel was not aware of the importance of their testimony prior to trial.  In the case of Barringer, O'Keefe presents the affidavit of defense counsel, Richard Simmons, stating that Barringer was not interviewed prior to trial for several reasons:  Barringer had to consult with the Department of Insurance before submitting to an interview, counsel learned that Barringer was not going to be a government witness, there was insufficient time to conduct mid-trial investigative interviews, and Barringer's testimony was not needed to authenticate documentary evidence because it was admitted through stipulation.  Counsel further states that, after the trial, he deposed Barringer and Mabry in conjunction with a civil case brought by the Department of Insurance and obtained information that was used to cross examine Johnny Moore at the evidentiary hearing on the Rule 33 motion for a new trial.  According to counsel, "[h]ad the defense obtained prior to the trial, the information from these

---

[2]    Barringer and Mabry were partners in Heritage Management, which served as the deputy conservator of Physicians National Risk Retention Group, Inc. (PNRRG).

3

depositions and the documents first revealed during the Rule 33 evidentiary hearing, it is my belief that the jury, already faced with the admitted perjury by the other key witness (Donaldson), would have viewed Mr. Moore's testimony as evasive and not credible. . . . Had all these additional facts been brought out through the cross-examination and presented to the jury, there would have been a fair trial more likely to produce a fair and different verdict (*i.e.* defense verdict)." Affidavit of Richard Simmons.

 Further, O'Keefe contends that Mabry would have testified that Moore induced him to authorize that disbursement of $527,105 of PNRRG funds by telling him that Moore had received court approval. Barringer would have testified that he requested that Moore provide him with the documentation approving the disbursement for over a year, and would have reported the theft of those funds if Moore had not contacted the United States Attorney's Office and admitted his conduct. The movants argue that the witnesses would have shown that Moore intended to use the funds personally and contradicted Moore's story that Michael O'Keefe told him to use the funds.

 O'Keefe places sole responsibility for counsel's failure to call the witnesses on the "fraud and deceit" of the prosecutor for not delivering the Brady material to the defense. He contends that the Sixth Amendment constitutional deprivation "was not primarily the result of any deliberate or negligent act of the Petitioner's attorneys." O'Keefe describes the team of attorneys as "very capable and conscious advocates who sincerely believe the defendants in this case are innocent." He argues that the defendants were deprived of effective assistance of counsel "because counsel was, through no fault of the counsel, physically prevented from

rendering effective assistance by the deliberate, calculated, intentional act of the prosecution." However, O'Keefe adds that counsel should have known that Barringer and Mabry had information that could have been very helpful to the defense, but did not interview Barringer and Mabry prior to trial.

Although O'Keefe frames the argument as a deprivation of a Sixth Amendment right to effective assistance of counsel, the majority of the argument concerns the prosecutors' Brady violations.

In reversing Judge Sear's grant of a new trial, the Court of Appeals concluded that, although the delay in turning over FBI 302 reports of Moore and Donaldson may have impaired the defense's ability to effectively cross-examine Donaldson and Moore, the delay did not violate Brady.  United States of America v. O'Keefe, 128 F.3d 884, 899 (5th Cir. 1997).  The defendants filed a second joint motion for new trial on grounds, *inter alia*, of newly discovered evidence of a violation of Brady/Giglio resulting from prosecutorial misconduct and the cumulative effect of all Brady/Giglio violations.  This court denied the motion because the defendants failed to meet the threshold requirement that any of the evidence presented was newly discovered and was unknown at the time of trial.  See Order and Reasons, December 17, 1998.

The Court of Appeals affirmed the convictions and sentences on direct appeal in September 2000.  The defendants again raised Brady claims on various grounds, including the newly discovered evidence which was learned in the civil proceeding, in a Rule 33 motion in June 2002, and the court held a lengthy evidentiary hearing.  The court denied the Rule 33

motion, and the Court of Appeals affirmed the denial.  The defendants raised claims of Brady violations in a § 2255 motion, and the court denied the motion because the claims had been considered and rejected in prior proceedings.

The allegations of Brady violations have been considered and rejected in prior proceedings and are not considered on § 2255 review or in a Rule 59(e) motion.  See United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994).

As to the Sixth Amendment argument that counsel was ineffective in failing to interview and call Barringer and Mabry as witnesses, O'Keefe has not demonstrated that the defense was prejudiced.  O'Keefe has not shown how the lack of testimony from Barringer or Mabry regarding the deceptive, unauthorized methods Moore used to gain access to the money deprived the defendants of a fair or reliable result.  The question before the jury concerned what transpired between Moore and O'Keefe after Moore deposited the money in his trust account.  As to that issue, O'Keefe has not shown that the uncalled witnesses had any effect on the defense team's decision to rely on 1) the strong cross-examination of Donaldson, 2) Moore's admission that he stole the money from his trust account with O'Keefe's blessing, 3) Moore's plea of guilty to this conduct and his testimony pursuant to a plea agreement with the government,  and 4) O'Brien's testimony concerning the defendants' version of the transaction as a legitimate business deal.

**C.  O'Brien's claims of ineffective assistance of counsel:  failure to present a defense**

O'Brien contends that the defense team did not engage in a discussion of plausible options to present a defense.  O'Brien argues that the team of defense attorneys negligently assumed that the case was won because the government's witness was caught perjuring himself.

O'Brien contends that counsel promised the jurors that they would hear the full story of the business dealings leading up to the criminal charges and that there was an innocent explanation for their conduct. O'Brien argues that defense counsel's failure to fulfill the promise during trial constitutes ineffective assistance.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. "Strickland v. Washington, 104 S.Ct. at 2065. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.

Counsel determined that O'Brien's testimony was sufficient to present the defendants' version of the case and to explain that the defendants were involved in a legitimate business deal. In addition, the jury heard testimony that Moore's law license had been suspended and saw the video deposition testimony of Terry North, a Bahamian director of Builders and Contractors Insurance Limited, who testified about the scope of Charles Donaldson's authority to enter an agreement with Physicians National Risk Retention Group on behalf of Builders and Contractors and the discovery by auditors of Donaldson's failure to submit the contract of reinsurance to Builders and Contractors. O'Brien has not overcome the presumption that defense counsel's action in not calling other witnesses was sound trial strategy.

**D.     Bennett's claim of ineffective assistance of counsel:  counsel failed to object to and appeal restitution judgment**

Bennett contends that the restitution judgment is erroneous because it was not fashioned in light of his financial resources, financial needs, and earning capacity. He argues that counsel

was ineffective in choosing to pursue a substantial reduction in the amount of loss, rather than urging that his inability to pay the restitution amount in the future rendered the judgment improper.

Bennett has not shown that counsel was incompetent for failing to raise the particular issue of his ability to pay restitution or that this argument was stronger than those arguments that counsel, in his reasonable professional judgment, raised on appeal. Paragraph 84 of the presentence report indicates that Bennett was asked to provide information regarding his assets, liabilities, and credit history and declined the opportunity to provide such information. Further, the court overruled the objection to paragraph 55 of the presentence report, which characterized Bennett's role in the offense as a minor participant, stating that Bennett "was the beneficiary of major funds derived from the scheme." Moreover, the court substantially reduced the amount of restitution that was recommended in the presentence report, and the Court of Appeals affirmed the decision when the government challenged the restitution order on appeal. Bennett has not demonstrated that counsel acted unreasonably in foregoing the issue of his ability to pay when counsel did raise stronger issues on appeal.

**E.  Bennett's conflict of interest claim**

Bennett contends that the full scope of Sixth Amendment protections were not afforded because counsel's representation of both him and O'Brien created a conflict of interests. Bennett contends that the Federal Public Defender from Columbus, Ohio, whom Judge Sear appointed to review the indictment, possible defenses, and the range of punishment, was unable to explain the elements of the charges against him. Bennett contends that, as a result, he did not have a full

8

understanding of the entire matter.

Bennett reiterates the same arguments presented in his § 2255 motions. He gives no specific details of how he was affected by counsel's dual representation. Accordingly, Bennett has not established the constitutional predicate for his claim of ineffective assistance. See Cuyler v. Sullivan, 100 S.Ct. 1708, 1719 (1980).

### F.  Bennett's claim of Brady violation

Bennett contends that the government has failed to provide all Brady material. The various due process arguments concerning Brady violations have been considered and rejected in prior proceedings and will not be considered on reconsideration of the denial of Bennett's 2255 motion. See United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994). As discussed above, Bennett joined his codefendants in raising various Brady violations in motions for a new trial, on appeal of the denial of the motions for a new trial, and on direct appeal.

### G.  Are Booker and Blakely applicable?

O'Keefe asks the court to reconsider that portion of the Order and Reasons of June 29, 2005 that concerns the application of United States v. Booker, 125 S.Ct. 738 (2005) and Blakely v. Washington, 124 Sup. Ct. 2531 (2004) to his sentence.[3] O'Keefe presents two arguments: 1) that his case was not yet final at the time Booker was decided because of the complex procedural history, and alternatively 2) that Booker should apply retroactively. If the court determines that Booker does not apply, O'Keefe seeks a certificate of appealability or other equitable relief.

---

[3] O'Keefe is proceeding *pro se* in his motion for reconsideration of the denial of his § 2255 motion on other grounds. Counsel has filed this motion "as an aid to defendant's attempt to articulate how the Booker and Blakely cases apply to the unique circumstances of his case."

**1) The case was not yet final at the time of Booker**

O'Keefe contends that a Rule 33 Motion for a New Trial based on newly discovered evidence was on appeal to the United States Court of Appeals (mandate issued on January 15, 2005) and to the United States Supreme Court ( writ of *certiorari* denied on May 16, 2005) when Booker was decided on January 12, 2005. Therefore, he argues, the case was still on "direct review" or "not yet final" as to the Rule 33, and Booker is applicable.

The Supreme Court has defined when a conviction becomes "final," stating as follows: "By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." Griffith v. Kentucky, 107 S.Ct. 708 (1987). "[T]he Sixth Circuit has addressed the precise question whether Rule 33 motions are included in the process of direct review when they are based on newly discovered evidence and filed after direct appeal either has or could have been taken." Trenkler v. United States, 268 F.3d 16, 21 (1st Cir. 2001). In Johnson v. United States, 246 F.3d 655 (6th Cir. 2001), the Court of Appeals held that such a motion, which the court referred to as a "delayed" Rule 33 motion, is a collateral challenge separate from direct appeal. Id. at 659 & n.4. The Court of Appeals found support for the conclusion in Federal Rule of Appellate Procedure 4(b). Id.

> Under that rule, if a Rule 33 motion that is not based on newly discovered evidence is filed within the seven-day period, then the "notice of appeal from a judgment of conviction must be filed within 10 days after the entry of the order disposing of the [Rule 33] motion, or within 10 days after the entry of the judgment of conviction, whichever period ends later." Fed. R. App. P. 4(b)(3)(A). In other words, the ten-day period for filing a notice of appeal is tolled while a Rule 33 motion not based on new evidence is pending, and begins

10

> to run anew after the order disposing of the motion. Similarly, the period for
> filing a notice of appeal is tolled while a Rule 33 motion based on new evidence
> is pending, so long as that motion is filed within ten days after the entry of the
> judgment of conviction. However, if a Rule 33 motion based on new evidence is
> filed later than ten days after the entry of the judgment, a defendant wishing to
> appeal the denial of the Rule 33 motion must file a second notice of appeal, even
> if the first appeal of right is still pending. Thus, just as we do today, the Rules of
> Appellate Procedure draw a distinction between timely Rule 33 motions filed
> within ten days after the entry of the judgment of conviction and those that are
> filed more than ten days after the entry of the judgment of conviction.

Id. at 658-59 (internal citations omitted). "[T]reating delayed Rule 33 motions based on newly discovered evidence as part of the process of direct review would mean that no conviction could be deemed final for purposes of § 2255 until the expiration of the three-year period for filing such motions." Trenkler v. United States, 268 F.3d at 21-22. "Or, perhaps, a prisoner's conviction could become final if the court of appeals affirmed the judgment of conviction and the Supreme Court denied certiorari, and then lose its finality if the prisoner later claimed to have discovered new evidence, only to become final again once the Rule 33 motion was adjudicated. Id. at 22. "Either possibility is unacceptable." Id.

The Rule 33 motion had no effect on the finality of the conviction. O'Keefe was sentenced on January 13, 1999, and filed a timely direct appeal of his conviction. The conviction was affirmed on August 11, 2000, and the Supreme Court denied *certiorari* on June 11, 2001. O'Keefe's Rule 33 motion is a collateral proceeding and not part of a direct appeal of the judgment of conviction, which became final upon denial of *certiorari* before Booker was decided.

**2) Should Booker apply retroactively?**

O'Keefe contends that he was sentenced to more than 19 years in prison based on mandatory guidelines which violated his Sixth Amendment right. O'Keefe asks the court to reconsider the retroactivity of Booker in an initial § 2255 motion as a matter of constitutional error. Further, O'Keefe argues that every pre-Booker sentencing involves statutory error because every pre-Booker guideline case was imposed based upon the assumption that the guidelines were mandatory.

"The Booker rule merely reallocates decision-making authority. . . . It is concerned with the identity of the decision-maker and the amount of evidence required for a sentence, rather than with what primary conduct is unlawful. Therefore, the Booker rule is procedural in nature." United States v. Gentry, 432 F.3d 600, 603 (5th Cir. 2005). Further, the Booker rule is a new rule for purpose of retroactivity. Id. at 604. "Because Booker does not fit into either of the two Teague [ v. Lane, 109 S.Ct. 1060 (1989)] exceptions to non-retroactivity, . . . Booker does not apply retroactively on collateral review to an initial 28 U.S.C. § 2255 motion." Id.

All of the challenges to O'Keefe's sentence are premised on the retroactive application of Booker to this case. The court recognizes that the Supreme Court of the United States has granted a petition for a writ of *certiorari* in Burton v. Waddington, No. 05-922 (*cert. granted* June 5, 2006) on the question of whether Blakely v. Washington, 124 S.Ct. 2531 (2004), applies retroactively in collateral proceedings filed under 28 U.S.C. § 2254. Because, under Fifth Circuit precedent, Booker does not apply retroactively on collateral review to this initial § 2255

motion, the motion for reconsideration of the denial of § 2255 relief on this basis is denied.[4]

### III. CONCLUSION

The movants have not demonstrated manifest errors of law or fact, nor have they presented newly discovered evidence. Accordingly, the motion to alter or amend the judgment denying § 2255 relief is denied.

New Orleans, Louisiana, this  26th   day of June, 2006.

*[signature]*
MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE

---

[4] O'Keefe also requests a statement from the court as to the effect that the sentencing guidelines had on the sentence the court imposed, in the event that the Court of Appeals or the Supreme Court finds that Booker applies in this case. Based on the Fifth Circuit's decision in United States v. Gentry that Booker does not apply retroactively, the court refrains from issuing such a statement unless and until the Supreme Court would decide that Booker is retroactive.