UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 95-0106** |
| **MICHAEL O'KEEFE, SR. ET AL.** | **SECTION: "S" (5)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the United States of American's motion to vacate the October 19, 2005 order modifying restitution payments is **GRANTED**. (Document #915.)

**IT IS FURTHER ORDERED** that Michael O'Keefe's motion to vacate the January 25, 2008 order of garnishment is **DENIED**. (Document #912.)

### I. BACKGROUND

Michael O'Keefe is serving a sentence of imprisonment of 235 months after a conviction on various counts of wire fraud, mail fraud, and money laundering. In addition, the court ordered that O'Keefe pay restitution to the Physicians National Risk Retention Group in the amount of $1,174,849. The payment of restitution was to begin while the defendant was incarcerated.

On October 17, 2005, O'Keefe filed a *pro se* motion to clarify the judgment and

probation/commitment order. O'Keefe requested that the court change the obligation to pay any further restitution until the commencement of his supervised release. He stated that he had "long ago transferred and assigned all of his financial rights and interests in order to reduce his indebtedness and satisfy some obligations." He stated that he still had significant debts, including very large legal bills, and added as follows:

> In order to pay for telephone calls and postage stamps needed to maintain contact with family and a few close friends; to purchase a few basic commissary items; and to pay the restitution installments set by the B.O.P., petitioner has had to rely on funds furnished by members of the family. The recent hurricane and flood has devastated the family members who have been furnishing petitioner with the needed funds. Their homes were flooded and their personal belongings destroyed. Their homes are still not accessible and probably will have to be dismantled. Their insurance will not be sufficient to cover a major part of what will be lost. They have lost their sources of income and have had to rely on credit cards and other credit arrangements in order to exist. This catastrophe has particularly adversely [a]ffected petitioner's daughter and her two minor children. Petitioner's son-in-law is incarcerated and has no resources to assist his wife and children. Petitioner's daughter will have to rely on unemployment compensation until she can find employment again.
>
> Petitioner is attempting to raise funds to pay for the minimum telephone usage and postage needed along with some necessary commissary items. Under the circumstances in the Greater New Orleans Area, petitioner does not believe he should ask others who are already burdened with financial problems to furnish funds to pay petitioner's restitution obligation and take funds that would have been given to others who are in serious need of them.
>
> It petitioner does not make the restitution payments set by the B.O.P., petitioner will [lose] some "privileges" which would normally be considered essential, such as sleeping accommodations where it is possible to obtain enough quality sleep to maintain health.
>
> When petitioner was sentenced the court could not have envisioned the recent disaster which has caused such extreme deprivation to so many people along the Gulf Coast including petitioner's family and friends. The court could not have known that petitioner would have great difficulty in obtaining the modest funds

>required to pay for limited telephone calls, stamps and minor commissary
>necessities, plus the restitution installments required by the B.O.P.

Rec. Doc. # 818.  O'Keefe mailed a copy of the motion to the Assistant United States Attorney assigned to his case at 500 Poydras Street Room 210-B, New Orleans, Louisiana 70130, and to the Clerk of Court, who had opened offices in Lafayette, Louisiana, in the aftermath of Hurricane Katrina.  The motion was not noticed for hearing.

On October 20, 2005, the court amended the "Judgment and Probation/Commitment Order" of January 12, 1999 as follows: "The payment of restitution shall begin upon commencement of defendant's term of supervised release."  Rec. Doc. #819.

On December 13, 2007, after conducting an asset investigation, the United States filed an application for writ of execution, pursuant to the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. § 3203(c)(1) (FDCPA).  The government alleged that O'Keefe owns property which may be levied upon to pay the judgment ordering restitution in the amount of $1,174,849.  Specifically, O'Keefe had directed the Louisiana State Employees Retirement System (LASERS) to pay direct pension checks in the amount of $61,341.96 to be held in a bank account of his daughter, Erin Schmidt, and checks in the amount of $90,120.75 in the account of his associate, Keith Nunez.  Rec. Doc. #894.  Neither O'Keefe or his counsel contested the issuance of the writs.  The government was able to recover $2,927.38 from the accounts.  Rec. Doc. #900.[1]

---

[1] The government also filed a civil complaint, which is pending before this court in No. 08-0286, against Erin Schmidt, Keith Nunez, and Michael O'Keefe, Sr.  The government seeks to recover a money judgment against Schmidt, Nunez, and O'Keefe for the LASERS payments transferred to their accounts.

On January 18, 2008, the government filed a motion for writ of continuing garnishment, pursuant to 28 U.S.C. § 3205.  Rec. Doc. #897.  The court granted the application for writ of continuing garnishment and ordered the Clerk of Court to issue a writ of continuing garnishment to LASERS.  Rec. Doc. #899.  LASERS filed an answer, stating that it had in its possession or under its control personal property belonging to O'Keefe.  O'Keefe was served with a copy of the writ of garnishment and notified of his right to a hearing.  O'Keefe did not request a hearing.  On March 7, 2008, the court granted the government's motion for entry of the final order of garnishment and ordered that LASERS pay to the United States monthly the lesser of 25% of O'Keefe's disposable earnings or all amounts of O'Keefe's disposable earnings in excess of 30 times the federal minimum hourly wage.  Rec. Doc. #911.

On March 10, 2008, O'Keefe filed a motion to vacate the order granting the motion for writ of continuing garnishment (document #899).  On April 15, 2008, the government filed a motion to vacate the October 20, 2005, modification of restitution payments *nunc pro tunc* (document #819).

## II. DISCUSSION

**A.  Government's motion to vacate modification of restitution payments**

The government moves *nunc pro tunc* to vacate the modification of the terms of payment of restitution and to reinstate the original Judgment and Commitment Order entered on January 11, 1999.  The government explains that it was unaware of O'Keefe's October 2005 motion and order.  At the time the motion was filed, the New Orleans office was closed, and the satellite office in Baton Rouge was newly established.  It is unknown whether mail addressed to the New

Orleans office was delivered to Baton Rouge.  Notwithstanding, the Assistant United States Attorney assigned to the case was stationed in Dallas, Texas.  The government explains that, if the motion was received, it should have been forwarded to the civil division, financial litigation unit, because it concerned the payment of restitution.  However, the motion and order were never included in the financial litigation unit's condensed pleadings file that was used to draft the garnishment pleadings.  The government contends that O'Keefe's attorneys were apparently unaware of the *pro se* motion, and the government first became aware of it when O'Keefe filed a motion to vacate the order of garnishment.

The government argues that O'Keefe misrepresented his financial situation when he suggested to the court that Hurricane Katrina impacted his ability to make monthly payments on his restitution and that he could no longer rely on his daughter to provide him with money because she had lost her job as a result of Hurricane Katrina.  O'Keefe had actually received monthly payments of approximately $2,500 from LASERS since his sentencing in 1999.  The government argues that, rather than family and friends providing O'Keefe with $30 per month to pay restitution, O'Keefe was transferring tens of thousand of dollars to their accounts to frustrate the collection of maximum restitution.

In view of the difficulty in communication in the aftermath of Hurricane Katrina, the court will consider the government's motion to vacate the modification of restitution payments *nunc pro tunc*.  After a review of the representations made by O'Keefe in his motion for modification and the evidence presented by the government concerning O'Keefe's income, particularly the LASERS payments, the court concludes that the government's motion to vacate

the modifications of the original restitution payments should be granted. The order of October 20, 2005, amending the "Judgment and Probation/Commitment Order" of January 12, 1999, is vacated, and the "Judgment and Probation Commitment Order" of January 12, 1999, requiring O'Keefe to pay restitution while incarcerated, is reinstated. The payment of restitution shall resume as of the date of entry of this order, and no restitution will be due for the period during which the order of restitution was modified.

**B.  O'Keefe's motion to vacate writ of continuing garnishment**

O'Keefe seeks to vacate the court's writ of continuing garnishment, final order of garnishment, and order that LASERS make monthly payments to the United States. He argues that the balance of the restitution is not "due" because the order was amended to begin payment of restitution when he begins his term of supervised release.

As discussed above, the amended order that restitution payments begin when O'Keefe is on supervised release is vacated. O'Keefe has provided no other basis for vacating the order of continuing garnishment. Accordingly, restitution is "due," and the motion to vacate the writ of continuing garnishment is denied.

New Orleans, Louisiana, this  20th  day of June, 2008.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**